1  ANATOLE A. GEICHE
   460 31st Avenue
2  San Francisco, Ca 94121
   Tel. (415) 752-5565
3
   Plaintiff
4

**FILED**

JUL - 3 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-filing

5

6

7

8

9        UNITED STATES DISTRICT COURT

10       NORTHERN DISTRICT OF CALIFORNIA        **JL**

11              SAN FRANCISCO DIVISION

12

13  ANATOLE A. GEICHE,                )  CV 08        **3233**
                           Plaintiff  )  Case No.
14  vs.                               )
                                      )
15  CITY AND COUNTY OF SAN            )     COMPLAINT IN SECTION 1983
    FRANCISCO,                        )     AND COMMON LAW  FOR
16  INSPECTOR MICHAEL BECKER,         )
    INSPECTOR  ROBERT L. STEGER       )     Excessive Force ......................... p  6
17  SERGEANT MITCH LANG,              )     (Assault and Battery)
    NG ALPHA,                         )     Malicious Prosecution ................... p  12
18  KEITH PARKER,                     )     Abuse of Process .......................... p  18
    TODD BROTHERS,                    )
19  MATTHEW VALMONTE and              )
    DOES 1-50,                        )     **DEMAND FOR JURY TRIAL**
20                        Defendants  )
                                      )
21

22

23                      **INTRODUCTION**

24       This is a complaint for damages against four officers, a sergeant and two inspectors of the San

25  Francisco Police Department and against the San Francisco City and County for violation of plaintiff's

26  constitutional and common law rights. Plaintiff alleges that the said four officers, being apparently

27  narcotic intoxicated, misconduct on a public street; that he peacefully approached one of them and

28  asked for his badge number, as a second officer interfered and pointed his gun into the plaintiff's face at

1    close distance. Plaintiff then was violently assaulted and drugged about 40', from the middle of the

2    street onto sidewalk of the East side of the street, violently handcuffed, battered, booked on absurd

3    charges, and maliciously prosecuted for three years. The purpose of the false prosecution was not to

4    convict the plaintiff on the said absurd charges, but to extort from him a release of the police and the

5    city from the liability and cover up the whole matter. Such false prosecutions on false charges are

6    routine and extremely successful in San Francisco, but this time it failed.

7          Plaintiff further alleges that his malicious prosecution constituted also a malicious abuse

8    (misuse) of process, as the defendants employed it not for the purpose intended by the law to effect, but

9    for unlawful extortion ftom the plaintiff of a release from liability of the city and the police, which is a

10   routine practice in San Francisco.

11         The City and County of San Francisco is liable for its custom and practice of permitting and

12   encouraging the false arrests and the use of excessive force in committing such arrests, with the result

13   that officers were encouraged to believe that they could violate plaintiff's constitutional rights.

14   In fact, this city and county has no means and no desire to control police personnel conduct and to keep

15   it within the norm. Instead, it wholly relies on its awesome system of hypocrisy and cover-up.

16         Instead of perfecting police, the defendant municipality is simply covering-up police abuses,

17   channeling the pain and anguish of the police victims into the "Office of Citizens Complaints" (OCC)

18   or more correctly the "Office of Cops Cover-up" whose function is to dampen and neutralize the

19   rightful public discontent and liability claims.

20         The officers in this city are actually encouraged to lie and fabricate the charges against their

21   victims -- ANY victims, even the injured victims of violent crimes (such as by drugged drug dealers)

22   when they are  brutalized and victimized by police also. More sophisticated these lies and more

23   outrageous the fabricated officer's narratives and charges are, more useful they are to District Attorney

24   in the false prosecution of the victims for extortion of the releases of the police and the city from the

25   liability and to City Attorney in defeating the causes of police victims in civil courts.

26         The cry and primary aim of both San Francisco's anti-police brutality initiatives of 1983 and

27   2003 were to remove wrong people from the police force. Both times, the defendant municipality

28   betrayed the voters: the corrupt, dangerous to public  vulgar characters, any sort of deranged, power

1 | crazy bullies and moral perverts still infest the Police Department, and the citizen are on their total
2 | mercy, for their only recourse is complaining to OCC, the "Office of Cops Cover-up."

## PRELIMINARY STATEMENTS

1. **Jurisdiction.** This court has jurisdiction over this complaint because it arises under the laws of the United States. Plaintiff also invokes the pendant jurisdiction of this Court to hear and decide claims arising out of state laws.

2. **Venue.** Venue is appropriate in this court because all the acts and omissions giving rise to this suit occurred in this district.

3. **Intradistrict Assignment.** This lawsuit should be assigned to the San Francisco division of this Court because the substantial part of the events and omissions which gave rise to this lawsuit occurred in San Francisco.

4. **Plaintiff Geiche.** Plaintiff is and at all times relevant herein was a citizen of the United States and a resident of the City and County of San Francisco, State of California and is a good and conscientious citizen of the State of California.

5. **Individual Defendants.** At all times relevant herein, the individual defendants NG ALPHA, KEITH PARKER, TODD BROTHERS, MATTHEW VALMONTE were acting officers of the Police Department of co-defendant, City and County of County of San Francisco; Inspector BECKER and Inspector ROBERT STEGER were acting Inspectors and Sergeant MITCH LANG was acting sergeant of the same department.

6. At all times mentioned herein, all the individual defendants were acting under color of law, to wit, under the color of the statutes, ordinances, regulations, policies, customs and usages of the State of California and/or the city of San Francisco.

7. The **Co-defendant City and County of San Francisco** is a municipality duly incorporated under the laws of the state of California.

8. The identities of **Defendants DOES 1-50** are presently unknown to the plaintiff. Plaintiff believes that at all times material to this Complaint they were the officials of the City and

1    County of San Francisco and  that they acted toward plaintiff under color of statuses, ordinances,

2    customs and usage of the State of California, City and County of San Francisco.

3        9.    **The Status of Limitation**. Upon a proper notice of claim to defendant municipality and

4    the denial of the claim, his suit initially was filed in  the San Francisco Superior Court -- during the

5    pendency of the criminal prosecution of the plaintiff, i.e. filed in violation of the state law. Plaintiff then

6    had to dismiss it without prejudice. The state laws tolls the statutory time limitation for the entire period

7    of  criminal prosecution of the plaintiff. Here, it is exactly 3 years: the prosecution  was dismissed on

8    July 10, 2006. Therefore, the time limitation here for the assault and battery, expires on July 5, 2008,

9    and malicious prosecution and abuse of process expires on July 10, 2008. The cause of action for

10   wrongful arrest was lost to the Statute of Limitation.

11       10.    **The Nature of Occurrence**. The instant suit  is the last chapter in  a development that

12   began during the San Francisco's *PROPOSITION H* of 2003 campaign as a part of the Proposition H

13   movement.  This Proposition was the second within preceding 20 years election initiative against police

14   corruption. The first one created  an "Office of Citizens Complaint" ("OCC"). The second one, sought

15   its reformation, claming that the defendant municipality had converted it into an "Office of Cops Cover-

16   up," the primary culprit of police corruption. In debates on the internet and radio, the prominent motive

17   was the people reluctance, out of fear,  in reporting the public misconduct of rogue police officers to

18   authorities.  This is what exactly the naive plaintiff attempted to do, fearlessly but naively, and he was

19   assaulted, battered, arrested, jailed and  prosecuted for whole three years on **utterly false charges**. The

20   said attempt to obtain the badge numbers was, of course, wholly senseless, for these numbers simply

21   could not effectuate in San Francisco any corrections. All the plaintiff's lengthy quixotic standing on

22   principle could achieve here only some exposure of the awesome hypocrisy and cover-up machine of

23   this city.

24       11.    **The Plaintiff's State of Mind at the Time of the Occurrence.**  Plaintiff lives in San

25   Francisco since April 1971. During this time, he had a number of traumatic experiences with police.

26   One such experience in 2001, and then one in April 2003, badly affected the plaintiff's life. During his

27   life in  San Francisco, plaintiff also witnessed numerous acts of police misconduct, e,g, such as a

28   deliberate and brazen parking of police cruisers encroaching (and thus, blocking) the entries into

1 | supermarkets parking lots. Abuse of narcotics by officers was typical. So, when then the said
2 | Proposition H of 2003 came up, the plaintiff naively embraced it. Like absolute majority of the voters,
3 | he had little understanding of true causes of police corruption. Still his predisposition was highly
4 | conscientious. Thus, throughout the 3 years of his wicked prosecution, he remained steadfastly standing
5 | on his principles and never bowed to evil pressure to admit some his fake guilt and admit righteousness
6 | of defendant's fabrications.

7 | 12.    **The Plaintiff's Litigation Aims.** The plaintiff's current suit is basically just the same
8 | standing on the principles. He realizes well that the financial compensation here would be limited and
9 | would not compensate his catastrophic losses. His motives are just the very same as those that were
10 | moving him when he approached the drugged officers on July 5, 2003. And he would prefer not to sue
11 | at all had there been any other rational and ethical recourses in this city, any other ways of correction of
12 | the wrongs complained herein.

13 | 13.    **The Location of Incident.** The incident herein described occurred in the City and
14 | County of San Francisco, on 27th Avenue, between Geary Blvd. and Anza Street. At all times herein
15 | mentioned, it was a public street in common use.

16 | 14.    **The Time of Occurrence.** July 5, 2003, Saturday, the second day of great extended 3-
17 | day Independence Day's festivity, at about 8:30 p.m. The whole incident (before his arrest) took about
18 | 3-4 minutes.

19 | 15.    **The Nature of Occurrence.** In response to a moral call, and in exercise of his
20 | constitutionally protected rights to confront and question the performance of public officials, the
21 | Plaintiff calmly approached one of four obviously narcotic intoxicated and abusing and oppressing the
22 | public police officers in order to get their badge numbers and to report them to authority, and they put a
23 | gun in his face, when he said that he needs their badge numbers to report them. Then they physically
24 | abused him, arrested, jailed and prosecuted on fabricated charges such as an assault and battery of the
25 | police officer and intent to kill him.

26 | 16.    **Prosecution of Plaintiff.** On July 7, 2003, Monday, without proper investigation, the
27 | defendant municipality contrived a sham complaint against Geiche to the California Superior Court.

28 | On July 10, 2003, the defendant municipality had filed the said complaint with the Court.

COMPLAINT IN SECTION 1983 AND COMMON LAW                                  Page 5 of 20

1    On July 10, 2006, upon request of District Attorney, the court dismissed the suit **"in interest of**

2    **justice,"** on the ground of prosecutor's **"inability to sustain the burden of proof."**

3    17.    A **Notice of Claim** against the City and County of San Francisco in this matter was filed

4    on January 02, 2004. On March 10, 2004, the claim was denied.

6    18.    **New, Pending Causes of Action Re Retaliatory Arrest.** Due the recent developments,

7    additional causes of actions for egregious, shocking consciousness acts of malicious retaliatory arrest

8    have arisen. Upon completion of related administrative proceeding, plaintiff will seek permission of

9    the Court to amend this Complaint by adding to it these new causes of action and new defendants.

11   **FIRST CAUSE OF ACTION AGAINST INDIVIDUAL DEFENDANTS**
12   **Excessive Force**

13   For his instant cause of action against Defendants  NG, PARKER, BROTHERS, VALMONTE,

14   plaintiff states:

15   19.    By this reference, Plaintiff incorporates each and every allegation and averment

16   contained in paragraphs 1 through 18 of this Complaint as though fully set forth herein.

17   20.    On  July 5, 2003, a great extended Independence Day festivity, the Plaintiff was lawfully

18   in the City and County of San Francisco, completing a restoration of a floor of a rental unit of his

19   building, at 809 27th Avenue, San Francisco. He did not participate in the festivity and he was free of

20   any narcotics and not violating any law of the State of California. But the aforesaid four defendants

21   were narcotic intoxicated and were  acting unlawfully and insanely.

22   21.    At about 8:30 p.m.,  he was driving his business van on 27th Avenue, southward, toward

23   Anza St., returning to his work after a short trip to his nearby home, as he observed in front of him two

24   double-parked side by side police cruisers, **both facing North and blocking the entire traffic in both**

25   **directions.**

26   22.    Defendant Parker was in the driver seat of the cruiser ("first cruiser")  double-parked in

27   the North bound lane of the street. He was working with papers. About 20' in front of him, parked in

28

1 | the parking lane, there was a car with a man in a driving seat, nervously smoking (Witness Dmitriy
2 | Merinov). All this looked as a typical moving violation episode.

3 |     23.    But the presence of the second car facing the south bound traffic and blocking the entire
4 | traffic in both directions was bizarre. None of these two cars were flashing the lights, but there were an
5 | officer in the middle of street in front of the cruisers (Defendant Brothers) and an officer in the middle
6 | of street in the rear of the building (Defendant Ng), both very eagerly and vehemently enforcing the
7 | blockage – apparently for no reason at all, in a state of hallucination. **In the eve of Proposition H of**
8 | **2003, the narcotic intoxicated police officers during big holidays were common.**

9 |     24.    The blockage enforcing were not securing anything, but just did not allow the both
10 | direction traffic to cross the line where they were. Brothers was menacingly shouting, and they both
11 | were wildly waving their hands at the approaching from both directions vehicles. They were continuing
12 | acting so even after the objects of their wrath have u-turned and moved out of sight.

13 |     25.    Whereabouts of Defendant Valmonte at that time is unknown. He appeared later on as
14 | from nowhere, looking sleepy.

15 |     26.    Upon an observation of the scene and talking to a nearby motorist [witness Merinov]
16 | sitting in the driver's seat of the car parked in the curb lane, about 20' ahead of the Parker's car, the
17 | plaintiff concluded that the both enforcing the blockage officers, Brothers and Alpha Ng were in state of
18 | hallucination, under influence of a narcotic, and were acting unlawfully, abusing and offending the
19 | public.

20 |     27.    Responding to a moral call, the plaintiff approached the nearest clearly intoxicated
21 | officer, Defendant Brothers, standing in front of the cruisers and enforcing the unlawful street blockage
22 | in insane manner.

23 |     28.    The Plaintiff's intent was to obtain his badge number and report the misconduct to the
24 | authorities.

25 |     29.    But when the Plaintiff stated this to Defendant Brothers and then to Defendant Parker,
26 | who left his car and approached the Plaintiff, Parker pulled his gun and pointed it in plaintiff's face at a
27 | few inches distance saying "Here!" Then Defendants Brother, Ng, Parker and Valmonte violently
28 | rushed at plaintiff and dragged him to the eastern sidewalk. On the sidewalk, the plaintiff stood facing

1 all four of them and reiterated his demand for their badge numbers.

2    30.    There they got his wallet from him. Then all of them conspired – agreed between
3 themselves in front of the Plaintiff -- to arrest him while there was no any reason for that.

4    31.    Plaintiff overheard the said defendant's conspiratory exchange of words and exclaimed,
5 *"Oh, you want to arrest me? Go ahead!"* – and he stretched both his arms in front of him.

6    32.    After Defendants Parker, Ng, Brothers, and Valmonte, conspired to arrest Plaintiff, they
7 assaulted him again, and manhandled him up again and handcuffed him, badly over-tightening
8 handcuffs. Then Defendant Parker, holding the handcuffs between plaintiff's wrists, roughly turned the
9 plaintiff's back toward Defendant Ng, and Ng strongly pushed plaintiff's shoulders. As Plaintiff was
10 falling forward, Defendant Parker roughly pulled him up, by the handcuffs.

11    33.    **This concerted shoulder breaking maneuver shocked plaintiff, and he turned to Ng**
12 **and firmly, but still in low voice, vowed to report him and sue him.**

13    34.    Plaintiff is informed and believes that the said shoulder dislocation is a routine arrest
14 maneuver in San Francisco. It may cause a severe injury to victims' arms and shoulders, which the
15 police uses then as a proof that the victim was resisting the arrest.

16    35.    Defendant Parker maliciously over-tightened the handcuffs on the plaintiff's wrists, and
17 the Plaintiff's hands became completely numb. Plaintiff was concerned and worried that such so long
18 over-tightening may cause serious injuries, and once, through his car compartment's opened window,
19 he told this to standing nearby Defendant Parker and demanded to loosen the handcuffs. In response,
20 defendant Parker opened the car's door, and ordered plaintiff, with a movement of hand, to step out,
21 and then he tightened the handcuffs with a force to the limit. Later on, upon arrival to the Richmond
22 Police station, Parker attempted to tighten them even more. At the station, he fastened these over
23 tightened handcuffs to a bench, putting plaintiff in very uncomfortable, hurting position.

24    36.    To the best of the Plaintiff's recollection and believe, he was subjected to this handcuffs
25 torture for over two hours. During this time, on several occasions, Parker roughly pulled the chain of
26 the handcuffs. As a result, two of Plaintiff's left hand fingers failed to recover completely due to an
27 apparent injury to a nerve. This injury causes a great discomfort to plaintiff, affects his quality of life,
28 especially his sleep and ability to use left hand, – especially in typing. Plaintiff is informed and believes

1    that such malicious over-tightening of the handcuffs is a routine torture by San Francisco police. Its
2    only purpose is to cause a suffering to police victims.

3      37.      In the narrative of their police report, defendants are simply denying that they were
4    intentionally blocking the street and enforcing the blockage. But this narrative is grossly false in many
5    respects. It was strongly contradicted by witness Merinov.in his audio taped statement to the police
6    inspector and in his notarized affidavit. Thus, defendants ascribed to plaintiff a grossly foul, aggressive
7    and insane language – Merinov denies it. Defendants ascribed to plaintiff an utterly insane, aggressive
8    behavior, hitting one of the officers in chest, even a threat to kill one of the officers – Merinov denies
9    all this. Merinov said that plaintiff looked "normal."

10      38.      To act so grossly outrageously, plaintiff could not be even a habitual mad bully, but had
11    to be narcotic intoxicated. But this man, 65 years old at that time, with a degree equal to American PhD
12    in bioloqy and a degrees in engineering and literature, a five buildings owner, was and still is known as
13    a hermit and a peaceful, sound minded toiler relishing piece and tranquility. He had just completed a
14    very difficult tiresome repair work, all by himself (a restoration of the apartment hardwood floor) and
15    was too tired to act so madly. Merinov specifically denied that plaintiff was drunk as being very close
16    from plaintiff, he smelled no alcohol. Plaintiff never drinks alcohol, and defendants rejected plaintiff
17    demand to test him for alcohol, and as well he does not take any recreation drugs.

18      39.      Thus, in the aforesaid event, plaintiff was not violating any laws, was not attempting to
19    interfere with defendant's execution of their any lawful duties, and was not engaged in any assaultive
20    behavior toward defendants.

21      40.      The said defendants assault and battery was entirely unjustified by any actions of
22    plaintiff and constituted an unreasonable and excessive use of force. But the police had no reason to use
23    any force at all.

24      41.      The actions alleged above deprived plaintiff of the following rights under the United
25    States Constitution:

26          a,      Freedom from the use of the excessive and unreasonable force.

27          b,      Freedom from deprivation of liberty without due process of law.

28          c,      Freedom from summary punishment.

1   42.    defendants subjected plaintiff to such deprivation by malice and a reckless disregard of
2   plaintiff's rights.

3   43.    The direct and proximate result of defendant's act is that plaintiff has suffered permanent
4   injuries, was forced to endure pain and mental suffering, and was deprived of his physical liberty, all to
5   his damage whose extend to be proved at the trial.

6   44.    The aforesaid acts of defendants were willful, wanton, malicious and oppressive and were
7   motivated by ill will to harm plaintiff and to intimidate him and others and teach him and others a
8   lesson that one may not "fool around" with the police but must afraid of it and must refrain from
9   exercising their constitutional rights. Such acts, therefore, deserve an award of punitive damages.

10

11

12                    **SECOND CAUSE OF ACTION AGAINST DEFENDANT**
13                                    **MUNICIPALITY**

14   For his instant cause of action against Defendant Municipality, Plaintiff states:

15   45.    Paragraphs 1-44 are incorporated herein by reference.

16   46.    The police wrongs described above were exactly of that very category that caused two
17   described above San Francisco public uprisings. The latter of them was the Proposition H of 2003. In
18   fact, the described above plaintiff's move to obtain the badge numbers of the offending officers was a
19   Proposition H influenced move.

20   47.    Said police wrongs was a routine police practice, as defendant municipality permitted,
21   encouraged, tolerated, and ratified a pattern and practice of unjustified, unreasonable, and illegal abuses
22   by police officers in that:

23          a.    defendant failed to discipline or prosecute or in any manner deal with known incidents of
24                the abuses.

25          b.    defendant refused to investigate complaints of previous incidents and, instead, officially
26                claimed that such incidents were justified and proper.

27          c.    following the voters' mandate of 1983, defendant established the Office of Citizens
28                Complaints, but turned it into an agency of cover-up of police abuses, which then

---

COMPLAINT IN SECTION 1983 AND COMMON LAW                    Page 10 of 20

1  resulted in voter's uprising of 2003 (Proposition H).

2      d.    defendant actually encouraged, and still encourage, its police officers to lie and fabricate

3  police reports and false charges against the victims of police abuses: such fabricated reports

4  and charges were then routinely used by District Attorney for extortion from the victims

5  releases of defendant and its police officers from liability; and for the same purpose, the City

6  Attorney routinely used and still uses such lies and fabrication to defeat the police victims

7  causes in courts.

8      e.    by means of both inaction and cover up of such police abuses, defendant encouraged

9  police officers employed by it to believe that said improprieties were permissible.

10  48.    On information and believe, the systemic deficiencies include but are not limited to:

11      a.    preparation of investigative reports which uncritically rely solely on the word of

12  police officers involved in the incidents and which systematically fail to credit testimony by

13  non-police officer witnesses.

14      b.  preparation of investigative reports which omit factual information and physical evidence

15  which contradicts the accounts of the officers involved.

16      c.    issuance of public statements exonerating officers involved in such incidents prior to the

17  completion of investigation.

18      d.    failure to review investigative reports by responsible superior officers for accuracy or

19  completeness and acceptance of conclusion which are unwarranted by the evidence or which

20  contradict such evidence.

21  49.    Defendant also maintained, and still maintains,  a system of grossly inadequate training

22  pertaining to the ethics of police officers relation with members of the public and to the obligation of

23  police officer to respect the constitutional rights of  these people.

24  50.    The foregoing acts, omissions, and systematic deficiencies are policies and customs of

25  defendant and such caused police officers of defendant to believe that their misconduct and fabrication

26  of charges would not be only honestly and properly investigated, but would be welcome.

27  51.    As a direct and proximate result of  the aforesaid acts, omission, systemic deficiencies,

28  policies and customs of defendant municipality, its officers assaulted, buttered and injured the plaintiff

1   and then fabricated charges against him to initiate false prosecution of the plaintiff.

2       52.    The aforesaid acts of Defendants were willful, wanton, malicious, oppressive and

3   despicable, and are, therefore, justifying an award of punitive damages.

4

5       ## THIRD PENDANT CLAIM OF ACTION AGAIST DEFENDANT MUNICIPALITY

6       ## AND DEFENDANTS NG, PARKER, BROTHERS AND VALMONTE

7                                **Assault and Battery**

8

9   For his instant cause of action against Defendant Municipality, Defendants Inspector BECKER,

10  Inspector STEGER, LANG, NG, PARKER, BROTHERS, VALMONTE, Plaintiff states:

11      53.    Paragraphs 1-52 are incorporated herein by reference.

12      54.    At the time of police assault and battery on plaintiff described above, Defendants Ng,

13  Parker, Brothers and Valmonte assaulted and battered plaintiff.

14      55.    As a result of the assault and battery, plaintiff suffered damages as aforesaid.

15      56.    Plaintiff invokes the pendant jurisdiction of this Court to hear and determine this claim.

16

17      ## FOURTH CAUSE OF ACTION AGAINST ALL DEFENDANTS

18                                **Malicious Prosecution**

19

20  For his instant cause of action against Defendant Municipality, Defendants Inspector BECKER,

21  Inspector STEGER, Sergeant LANG, PARKER, NG, BROTHERS, VALMONTE, Plaintiff states:

22      57.    Paragraphs 1-56 are incorporated herein by reference.

23      58.    As this is described above, defendants conspired to arrest the plaintiff and jail and

24  prosecute him on false charges. And they did arrest him then without any probable cause and any

25  explanation of charges. They agree then between themselves to place plaintiff in the back of the

26  Parker-Valmonte's cruiser and did. Plaintiff remained there for about two hours while the defendants

27  were apparently waiting for Sergeant Lang.

28

59.    At one point, Parker opened the door and offered plaintiff to release him on certain conditions, but plaintiff cut short the offer and demanded to take him to station and to make a proper report. Parker replied, "Fuck you then. You will go to jail."

60.    Eventually Defendant Sergeant Lang arrived, extremely irritated, irrational and mean. Plaintiff is certain that Lang was heavily narcotic intoxicated, too, for he is normally a calm and rational. He approached the plaintiff and, without any questioning him, using racial slang, said, repeating this several times: "Durak!" (meaning in Russian "stupid"). "What do you think would happen to you, if you would lay hand on a police officer? You will go to jail!" And he forcefully and repeatedly vowed that plaintiff will go to jail and will be prosecuted. Plaintiff attempted to speak to Lang but to no avail.

61.    Parker and Valmonte then transferred plaintiff into the Richmond Police Station where he was booked. Upon arrival to the Station, Valmonte walked away, and plaintiff was left in charge of Parker. Instead of his badge, Parker wore a plate "Patrick."

62.    Extremely irritable and violent, Lang performed booking. Plaintiff discovered that his wallet was torn and empty. Credit and membership cards, blank checks, and about $150 cash – all gone. Lang also ordered to impound plaintiff's van on "STOP" program involving very heavy fines.

63.    After the booking, defendant Parker said to the innocent Plaintiff: "Now you have a criminal record… You are a criminal now." Plaintiff replied: "Now l can be proud of myself. I am a hero now." Parker mockingly applauded. Plaintiff then warned Parker that he, Parker, will not get away with what he has done. Parker replied: "You know what?.. I do not give a shit… Let's see what kind of hero you will be in jail."

64.    At or about midnight of July 5, 2003, without any explanation of charges, Plaintiff was jailed in county jail on $16,500 bail. Within a few hours, he obtained a bail, without any advance payment, and was released in the morning of July 6, 03, with an order to appear before judge on July 10, 03.

65.    On July 6, 03, the exhausted plaintiff gave an audio taped interview to Inspector Becker. At that time, plaintiff have not seen yet the narrative of the police report, but Becker was familiar with it.

66.    In the interview, plaintiff addressed a few most crucial for the case matters strongly contradicting the defendants officer's story and thus raising a number of decisive issues of fact. E.g. –

    a.    the position of the police cruisers blocking all the traffic at the scene of the incident and the length of the time they were in this position;

    b.    physical reinforcement of the traffic blockage by Brothers and Ng personally; where actually these officers were, how they were enforcing the blockage;

    c.    what officer the plaintiff approached; where that officer was;

    d.    aiming gun into plaintiff's face and the exact circumstances of this event;

    e.    battery of the plaintiff by the officers;

    f.    snatching wallet by Parker from the plaintiff's hand before his arrest;

    g.    had the plaintiff ever made any assaultive move toward any officer; had he ever touched Officer Ng, or any other officer;

    h.    assault of Ng on the handcuffed plaintiff with shoulder breaking maneuver;

    j.    the exact reaction of plaintiff to this maneuver; had he ever threatened to kill Ng.

67.    **Each and every and all of the aforesaid issues of fact directly relate to the charges against plaintiff.** But when, in the morning of July 7, 03,  Becker interviewed the neutral eyewitness, **Dmitriy Merinov,** he avoided each and every and all these issues of fact and instead maliciously proceeded with false prosecution on fabricated charges.

68.    Merinov short interview strikes with sincerity. His statements were in line with plaintiff's statements and they made it obvious that the narrative of police report is a typical police fabrication. So, Becker discontinue the interview, botching it down. Yet, although it was obvious that there was no any probable cause for the arrest, and that most likely than not this case has no chance before any jury, he presented to Merinov the plaintiff incoming prosecution as a matter of course, which indicates that this decision was made beforehand.

69.    On July 10, 2008, in the same preset manner, Inspector Steger, filed, on false and improbable charges, a sham suit against the plaintiff in the Superior Court of the State of California, County of San Francisco, Action No. 2116609, **and  3 years long malicious prosecution followed.**

70.    **The first fabricated charge** outlined in the complaint, totally false and outrageous, was the following:

        a.    "Violating Section 422 of the California Penal Code in that the said defendant threaten to commit a crime which would result in death and great bodily injury to another person, to wit: **SFPD Officer Alpha Ng**, made so unequivocally, unconditionally, immediately and specifically as to convey to the person threatened a gravity of purpose and immediate prospect of execution"

The truth is that in the entire about 3 minutes long incident the plaintiff spoke to Ng first time only after plaintiff was violently handcuffed and only after Ng assaulted the plaintiff with the shoulder breaking maneuover. The only plaintiff threat was his vow to report him and sue him. The second and the last time plaintiff spoke to Ng when Ng stood by the open window of plaintiff's confinement in the Parker-Valmonte's car. The handcuffed plaintiff only reiterated his vow to sue Ng and report him.

71.    **The second  fabricated charge** outlined in the complaint, totally false and outrageous, was the following:

        "Violating section 243(b) of California Penal Code, in that the said defendant did willfully and unlawfully use force and violence upon the person of **SFPD Alpha Ng** when said defendant knew and  reasonably should have known that said person was a peace officer then and there engaged in performance of his/her duties."

The truth is plaintiff never made any assaultive move toward Ng (or any other officer at the scene or anywher). And he never touched Ng. And narcotic intoxicated Ng was engaged in unlawful and outrageous activities.

72.    **The third fabricated charge** outlined in the complaint, totally false and outrageous, was the following:

        "Violating section 148 (a)(1) of California Penal Code, in that the said defendant did willfully and unlawfully resist, delay and obstruct SFPD Officer Alpha Ng who was then then and there a Peace Officer attempting to and discharging the duty of his/her office and employment."

1   The truth is the plaintiff approached drug affected Officer Brother to obtain his badge number and he

2   had to give it to plaintiff, but instead resorted to violence which actually was all his and Ng's activity

3   there. Plaintiff delayed or obstructed nothing: the said four drugged officers had, in fact, "obstructed

4   and delayed" plaintiff –for three years of malicious prosecution. It is the festive, narcotic intoxicated

5   defendants were loitering around, indulging in ill activities described above, but the plaintiff was in a

6   serious and difficult work. In fact, at that time when he run into the insane street blockage by

7   hallucinating defendants, he was harrying up to the apartment where he just completed restoration of

8   the floor to switch off heating fans that were on to dry up the varnish and to open windows to remove

9   the fumes. Because of the crazed defendants, he was unable to do this at all, and the fans were working

10  throughout all night, and the fumes penetrated into the upper floor and intoxicated the people and pets

11  there.

12      73.    **The fourth fabricated charge** outlined in the complaint, totally false and outrageous,

13  was the following:

14          Violating section 2800 of California Vehicle Code, in that the said defendant did willfully

15          and unlawfully fail, refuse, and neglect to comply with the lawful order, signal, and direction

16          of uniformed peace officer while performing his duty.

17  The truth is the narcotic intoxicated Officers Brothers and Ng were indulged in outrageous unlawful

18  activities and plaintiff was acting within his rights to approach Brothers and ask for his badge number

19  and tell him that he, plaintiff, will report him to authorities. The defendants falsely present in the

20  narrative of the police report that the plaintiff was ordered not to approach the vehicle of Dmitriy

21  Merinov: the order was to get out of the vehicle while plaintiff was already speaking to Merinov, and

22  plaintiff did get out of it.

23

24      74.    While being well aware that plaintiff was not in violation of any law, defendants

25  unlawfully searched his vehicle. Then they maliciously impounded it on "STOP" program involving

26  very heavy fines.

27

28

1    75.    Defendant Parker unlawfully snatched plaintiff's wallet out of his hands while he was

2    not under any arrest yet. Apparently out of pure malice, defendant have removed out of it plaintiffs

3    credit cards, blank checks and other documents; and they had also stolen out of it about $150 in cash.

4    76.    Plaintiff had extremely difficult time in finding a lawyer, for the lawyers whom the

5    plaintiff spoke with told the plaintiff that **regardless how sham this case is**, in San Francisco it will be

6    prosecuted, for this city's objective is to extort a release from liability, and the District Attorney is in

7    cahoots with the city. And that if the plaintiff's intent to resist the plea bargaining is so adamant, the

8    case may take a very long time and would be very costly.

9    77.    The outrageous DA game of setting and aborting the trials and of diversion offerings,

10   and even of *diversion deemed completed* offering -- followed. About 33 times plaintiff had to appear in

11   person at such trials. None of them was intended to go forward: at the end of the game, at the dismissal

12   of the case, the prosecutors commented that an error has happened: **somehow no one even looked into**

13   **the file**...

14

15   78.    Eventually, on the plaintiff's personal demand, the game stopped, and on July 10, 2006,

16   the case was dismissed **"in interest of justice"** and because of prosecutors **"inability to meet the**

17   **burden of proof."**

18   79.    By means of their unlawful detention of plaintiff and the malicious charges they placed

19   against him, defendants deprived plaintiff his liberty in violation of the Fifth and Fourteen

20   Amendments to the Constitution of the United States and 42 U.S.C. Section 1983.

21   80.    In arresting, incarcerating, interrogating and prosecuting plaintiff, the defendants knew

22   or should have known they were violating those constitutional rights set forth in paragraph 17 herein.

23   81.    As a direct and proximate result of the aforesaid acts of the defendant, and each of them,

24   plaintiff suffered great mental anguish, from then until now, and he will continue to so suffer in the

25   future; and he has lost and will in the future lose great sums of money by reason of his incarceration and

26   having been greatly humiliated and held up to public scorn and derision as a result of the foregoing act

27   of the defendants.

28

1    82.    Plaintiff was forced to incur over $20,000 to the date of filing this Complaint for bail

2    fees, attorney's fees, investigation expenses, and other expenses in the defense of plaintiff against the

3    unfounded prosecution by the defendant, which have been a serious burden to him.

4    83.    Plaintiff will be forced to incur substantial obligation for attorney's fees, court reporter's

5    fees, investigation expenses, and other expenses in this civil suit because of the unfounded and

6    unwarranted prosecution of the defendants, against plaintiff, which will be a serious financial

7    burden to him.

8    84.    The aforesaid acts of Defendants were willful, wanton, malicious, oppressive and

9    despicable, and are, therefore, justifying an award of punitive damages.

10

11
### FOURTH CAUSE OF ACTION
#### Abuse of Process

12

13    For his instant cause of action against Defendants CITY AND COUNTY OF SAN FRANCISCO,

14    INSPECTOR BECKER, INSPECTOR STEGER, SERGEANT LANG, NG, PARKER, BROTHERS,

15    VALMONTE, Plaintiff states:

16    85.    Paragraphs 1-84 are incorporated herein by reference.

17    86.    By this reference, plaintiff incorporates each and every allegation and averment

18    contained in paragraphs 1 through 83.

19    87.    The Defendants intentionally initiated the criminal prosecution of the Plaintiff's on

20    false charges with objective not to bring him to justice, but to obtain a collateral advantage over him:

21    under pressure of malicious prosecution to force him to drop the charges against the defendants by

22    accepting a diversion and thus to extort from him a relief from liability and to cover-up their own

23    crimes and misdeeds.

24    88.    In fact, as aforedescribed, after the Plaintiff's arrest, one of the four defendants co-

25    conspirators, Parker, did attempt to negotiate with the arrested plaintiff his release in exchange for relief

26    of defendants from liability. When the Plaintiff refused such deal, Parker said: "Fuck you then, you will

27    go to jail." And defendants then did resort to extortion of release from the liability under a duress of

28    prosecution, not designed for such unlawful needs.

COMPLAINT IN SECTION 1983 AND COMMON LAW                         Page 18 of 20

89.    The Plaintiff is informed and believe that such illegitimate prosecutions for relief the police from liability for wrongful acts are a routine in the city and county of San Francisco. The plaintiff is informed and believe that it is, in fact, a common knowledge in the student campuses of this city that if, during a political demonstration, the police injure a demonstrator and the victim is brought then to a hospital, he/she must lie about the cause of the injury, because otherwise the police would   prosecute him/her on false charges.

90.    As it is described above, Defendant Inspector Becker intentionally botched the investigation of the incident,  and  thus  prevented the clear and overwhelming showing of plaintiff's innocence, thus helping Inspector Steger in filing phony suit on the fabricated charges.

91.    In this city cover-up culture, the Plaintiff was doomed to the ordeal of the extortion from him of a relief to police from the liability through prosecution on false grounds,  and the Inspector Becker's actual role was not to establish the truth but to mar it. The aim of  prompt interrogation of the parties and the witnesses upon the events is being  the  preservation of the evidence -- Becker doomed a lot of important evidence to a mischief. And then, the very next move of the defendants was to persuade witness Merinov to change his account for grossly false one.

92.    As well, an important part of Plaintiff's interview was deleted from the audiotape. It pertained to the false defendant's charge used as a purported ground to prosecute the Plaintiff: the charge of  disobedience to lawful order. Under the real circumstances, the order, in fact, was unlawful. In police report, the real circumstances  and the nature of the incident were substituted for false fabrications. Geiche is informed and believes, and the facts of this case  confirm this, that such misuse of process of justice is conducted in this city in organized manner, in which the botching of investigations and  marring of the evidence by police inspectors are pivotal.

93.    Although Becker has severely botched the investigation and marred a lot of important evidence, from whatever Merinov was able to say, the Plaintiff's innocence and the falsity of the police charges still appear obvious and the prosecution still have no ground, but  defendants moved on with the police prosecution of the innocent plaintiff anyway, for such is this city system and nature. The police victim finds her- himself trapped and without absolutely a recourse. There is no agency, no public official to whom the grievances could be brought, who would look at the truth, but all the ways

1  lead to "OCC," the Office of Cops Cover-up, or to unscrupulous prosecution. Would this wronged,

2  traumatized person have enough resolve to try to bring the matter to a jury, she/he would get her-

3  himself only in another ordeal of search for a lawyer, for the lawyers concern is only money, and the

4  insults here are seldom profitable. The plaintiff heard the same from many lawyers: that it is very

5  difficult to sue the city and cops, for the cops are the worst liars and the City Attorney is most proficient

6  in honing their lies. The victims only recourse here is to lick their wounds.

7  94.    Each of the defendants here, separately and in concert, acted outside the scope of their

8  jurisdiction and without authorization of law, and each of the defendants, separately and in concert,

9  acted willfully, knowingly and purposefully with the specific intent to deprive plaintiff of his right to

10 freedom from illegal seizure of his person, freedom from unlawful arrest without evidence in support

11 thereof, and freedom from illegal detention and imprisonment. All of this rights are secured to plaintiff

12 by provision of due process clause of the Constitution of the United States and by 42 U.S.C. § 1983.

13 95.    For reason of the above, as a proximate result of false criminal charges initiated by

14 defendants, the Plaintiff suffered physical injuries and a great emotional trauma and harm, and was

15 forced to spent a great amount of money in defense of his right all to his damage whose extend to be

16 proved at the trial.

17 96.    The aforesaid acts of Defendants were willful, wanton, malicious, oppressive and

18 despicable, and are, therefore, justifying an award of punitive damages.

20 WHEREFORE: Plaintiff demands compensatory damages against the defendants and each of them in

21 amount of $200,000 and punitive damages against the defendants and each of them in the amount of

22 $500,000.

Anatole A. Geiche